**In the Interest of L.T. and L.L.**

**David Wm. Kierst, Jr., Juvenile Officer, Respondent,**

v.

**L.L. (Natural Father) and B.T. (Natural Mother), Appellants.**

**Nos. WD 55195 to WD 55198.**

Missouri Court of Appeals, Western District.

April 20, 1999.

Sandra Jean Wirtel, Kansas City, for plaintiff.

Laura Higgins Tyler, Ellen Day Jervis, Kansas City, for appellants.

Mary Kathryn O'Malley, Lori Lee Stipp, Kansas City, for respondent.

Before: LOWENSTEIN, P.J., and SPINDEN and HOWARD, JJ.

HOWARD, Judge.

Natural mother and natural father appeal from the judgments terminating their parental rights with respect to two minor children, L.T. and L.L. Appellants raise three points. First, they contend that the trial court lacked subject matter jurisdiction to terminate their parental rights because the court's findings that the children had been adjudicated abused or neglected and that the children had been under the jurisdiction of the court for more than a year were dependent on the underlying Chapter 211 judgments, which are void because they were signed by a family court commissioner with no assent by a judge. Appellants further contend under this point that the underlying "judgment"

regarding L.L. is void because it has no finding of reasonable efforts. The second point on appeal is that the trial court erred in sustaining the petition for termination of parental rights regarding L.L. on the ground stated in § 211.447.2(3)[1] because the court's finding that the child has been under the jurisdiction of the court for a period exceeding one year was not pleaded in the petition for termination, nor was it supported by substantial evidence. The third point on appeal is that the trial court erred in sustaining the petitions for termination regarding L.T. and L.L. on the ground stated in § 211.447.2(2) because there was no evidence that the children were adjudicated abused or neglected.

We affirm.

### Facts

#### L.T.

A first amended petition was filed on September 11, 1995, in the interest of L.T., a girl born on July 27, 1995. The petition was further amended in open court on October 25, 1995, and as amended alleged as follows: "The child is without proper care, custody, and support in that, in August and September, 1995, the child was diagnosed with failure to thrive, secondary to a failure of the mother to provide adequate nutrition for the child." On October 25, 1995, the amended petition came on for hearing before a family court commissioner. On October 27, 1995, the commissioner entered his "judgment," sustaining the petition and finding that L.T. was in need of care and treatment. The commissioner ordered that L.T. be placed in the custody of the Division of Family Services ("DFS").

On February 24, 1997, a petition for termination of parental rights was filed in the interest of L.T.

#### L.L.

A petition was filed on October 30, 1996, in the interest of L.L., a boy born on November 14, 1996. The petition was amended in open court on March 4, 1997, and as amended alleged as follows: "The child is without

proper care, custody and support in that the parents are unable to adequately parent the child at this time. Further, the parents are in need of services to assist in developing further parenting skills." On March 4, 1997, the petition came on for hearing before a family court commissioner. On March 5, 1997, the commissioner entered his "judgment," sustaining the petition and finding that L.L. was in need of care and treatment. As with L.T., the commissioner ordered that L.L. be placed in the custody of DFS.

On April 9, 1997, a petition for termination of parental rights was filed in the interest of L.L.

### Termination Proceeding

On October 9, 1997, the petitions for termination of parental rights with respect to both children came on for hearing before a family court judge. The juvenile officer asked the court to take notice of the underlying judgments with regard to L.T. and L.L., and the court took note of its own records.

On November 24, 1997, the judge entered his judgments terminating Appellants' parental rights. The court found sufficient evidence to sustain the petitions pursuant to § 211.447.2(2)(a) and § 211.447.2(3)(a), (b) and (c). This appeal followed.

### Standard of Review

■ A trial court's order terminating parental rights will be affirmed unless no substantial evidence supports it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. *In Interest of J.M.L.*, 917 S.W.2d 193, 195 (Mo. App. W.D.1996). We view the facts and all reasonable inferences therefrom in the light most favorable to the trial court's order. *Id.* This court will reverse only when left with a firm belief the judgment is wrong. *Id.*

### Point I

■ The first point on appeal is that the trial court lacked subject matter jurisdiction to terminate Appellants' parental rights. The court terminated Appellants' parental

1. All statutory references are to RSMo 1994.

rights on the basis of §§ 211.447.2(2) and (3). Appellants argue that the court lacked subject matter jurisdiction to terminate their parental rights on those bases because the court found pursuant to § 211.447.2(2) that L.T. and L.L. had been adjudicated abused and neglected, and pursuant to § 211.447.2(3) that L.T. and L.L. had been under the jurisdiction of the court for a period exceeding one year, and those findings were dependent on the underlying Chapter 211 judgments, which are void because they were signed by a family court commissioner and there was no assent by a judge.

### Waiver and Estoppel

In *Slay v. Slay*, 965 S.W.2d 845 (Mo. banc 1998), the Missouri Supreme Court held that documents signed by a family court commissioner do not constitute final appealable judgments because they "are not signed by a person selected for office in accordance with and authorized to exercise judicial power by article V of the state constitution." *Slay*, 965 S.W.2d at 845; *see also Fowler v. Fowler*, 984 S.W.2d 508 (Mo. banc 1999).

Shortly after the *Slay* decision, the Missouri Supreme Court held in *State ex rel. York v. Daugherty*, 969 S.W.2d 223, 225 (Mo. banc 1998), that any party who fails to challenge the commissioner's "judgment" waives the right to object to the commissioner's authority, findings and legal conclusions, and any party who assumes the benefits or burdens of the "judgment" is estopped from attacking it. *See also Fowler, id.* Therefore, as to any such party, "the commissioner's findings and recommendations are as conclusive as if entered as the judgment of an article V judge." *York*, 969 S.W.2d at 225; *Fowler, id.*

Section § 211.029 provides a similar mechanism to that in *York* for testing the correctness of the commissioner's determination. Section § 211.029 provides, in relevant part, that "[t]he minor and his parents ... are entitled to file with the court a motion for a hearing by a judge of the juvenile court within fifteen days after receiving notice of the findings of the commissioner." Appellants did not take advantage of this mechanism with regard to the underlying judgments, and therefore they have waived any objection to the commissioner's authority and findings in this case. The only distinction between *York* and the present case is that in this case Appellants are not directly attacking the commissioner's determination, but instead they are attacking a judgment relying on that determination. We find that this is a distinction without a difference. As we read *York*, because Appellants did not make a timely challenge to the commissioner's "judgments," they have waived any right they may have had to challenge those judgments, either directly or indirectly. In addition, because Appellants accepted the burdens of the underlying judgments, they are estopped from attacking the judgments, either directly or indirectly.

### Meaning of "Adjudicated"

■ Appellants further argue that because there were no valid underlying judgments, L.T. and L.L. were not "adjudicated" to have been abused or neglected within the meaning of § 211.447.2(2), and therefore the trial court erred in terminating their parental rights pursuant to this section. Black's Law Dictionary defines "adjudicate" as "[t]o settle in the exercise of judicial authority. To determine finally." We find that for our purposes "adjudicated" should not be narrowly defined as "decided by a judge," as Appellants are apparently defining it. Rather, we find that "adjudicated" as it is used in § 211.447.2(2) encompasses a commissioner's decision that a child has been abused or neglected.

### Reasonable Efforts

■ Appellants also argue that the underlying "judgment" regarding L.L. is void because it contained no finding that DFS made reasonable efforts to prevent or eliminate the need for removal of the children and to make it possible for the children to return home, as required by § 211.183. Therefore, Appellants argue, the trial court lacked subject matter jurisdiction to terminate their parental rights with regard to L.L. Appellants' contention that the commissioner should have made a finding of reasonable efforts is correct. *In Interest of E.S.*, 851 S.W.2d 676, 681 (Mo.

App. W.D.1993). However, as previously mentioned under our discussion of waiver and estoppel, Appellants did not file a motion for a hearing by a judge of the juvenile court within fifteen days after receiving notice of the findings of the commissioner pursuant to § 211.029. Therefore, Appellants have waived any claim of error concerning the commissioner's failure to make a finding of reasonable efforts in compliance with § 211.183. *T.S. v. P.S.*, 797 S.W.2d 837, 841 (Mo.App. W.D.1990).

## Point II

■ The second point on appeal is that the trial court erred in sustaining the petition for termination of parental rights regarding L.L. on the ground stated in § 211.447.2(3) because the court's finding that L.L. has been under the jurisdiction of the court for a period exceeding one year was not pleaded in the petition for termination of parental rights. Furthermore, Appellants argue, the court's finding that L.L. had been under the jurisdiction of the court for a period exceeding one year is not supported by substantial evidence.

■ Respondents concede this point. However, in a termination of parental rights proceeding, one of the grounds for termination, if adequately pleaded and proved, is sufficient to support termination. *In Interest of S.C.*, 914 S.W.2d 408, 411 (Mo.App. W.D.1996). Therefore, because we find that Appellants' claims of error concerning termination on the basis of § 211.447.2(2) are without merit, any error the trial court may have made in terminating Appellants' parental rights pursuant to § 211.447.2(3) is harmless.

## Point III

■ The third point on appeal is that the trial court erred in sustaining the petitions for termination of parental rights regarding L.T. and L.L. on the ground stated in § 211.447.2(2) because the evidence was insufficient to prove that ground by clear, cogent and convincing evidence in that there was no evidence in the underlying judgments that the children were found to be abused or neglected, a necessary element for a finding pursuant to § 211.447.2(2).

In *In Interest of P.M.*, 801 S.W.2d 773, 775 (Mo.App. W.D.1991), the appellants made an argument similar to the one in this case, that the trial court erred in ordering termination because the children had not been adjudicated abused or neglected. We found that where the trial court sustained the initial petitions alleging that the children were "without proper care, custody and support," the parents admitted the allegations in the petitions, and the trial court determined the children to be "in need of care and treatment," there was no question that the children had been adjudicated abused or neglected. *In Interest of P.M.*, 801 S.W.2d at 775–76.

Similarly, in the underlying "judgments" concerning L.T. and L.L., the trial court sustained the petitions alleging that the children were "without proper care, custody, and support," Appellants admitted the allegations in the petitions, and the commissioner found that the children were "in need of care and treatment."

Appellants attempt to distinguish *P.M.* by arguing that in that case this court looked beyond the underlying judgments to the allegations in the petitions and determined with reference to the definition of neglect found in § 210.110(5) that there had been an adjudication of abuse or neglect. Appellants argue that in the present case, the allegations in the petitions were not sufficient to support a finding that the children had been abused or neglected.

With respect to L.T., the petition in the underlying judgment alleged "[t]he child is without proper care, custody, and support in that, in August and September, 1995, the child was diagnosed with failure to thrive, secondary to a failure of the mother to provide adequate nutrition for the child." Although the commissioner did not specifically use the word "neglect," the allegations in the petition, coupled with the commissioner's findings, were sufficient for the trial court in the termination proceeding to find that L.T. had been adjudicated to have been neglected.

With respect to L.L., the petition in the underlying judgment alleged that "[t]he child is without proper care, custody and support

in that the parents are unable to adequately parent the child at this time. Further, the parents are in need of services to assist in developing further parenting skills." Neglect, as defined in § 210.110(8), is the "failure to provide, by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for the child's well-being." Although the allegations concerning L.L. are not as specific as those concerning L.T., we find that the allegations in the petition, coupled with the findings of the commissioner, provided an adequate basis for the trial court to find that L.L. had been adjudicated to have been abused or neglected.

The judgment of the trial court is affirmed.

All concur.