**STATE of Missouri, Respondent,**

v.

**Sherron WILSON, Appellant.**

No. 74442.

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 3, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 10, 1999.

Application to Transfer Denied
Dec. 21, 1999.

Deborah K. Van Arink, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl Caponegro Nield, Asst. Atty. Gen., Jefferson City, for respondent.

KENT E. KAROHL, Judge.

Defendant, Sherron Wilson, was convicted by jury of two counts of murder in the first degree, section 565.020.1 RSMo 1994, and two counts of armed criminal action, section 571.015 RSMo 1994. The jury acquitted defendant on an assault count and the associated armed criminal action. On May 22, 1998 the court sentenced defendant in accordance with the verdicts to life imprisonment without possibility of parole or probation on each of the murder counts and life imprisonment on each of the armed criminal action counts, with the sentences to be served concurrently. Defendant argues: (1) the juvenile court certification dismissing the juvenile court proceeding so he could be tried as an adult was issued by a juvenile court commissioner and not an Article V judge, thereby depriving the circuit court of jurisdiction; (2) the court erred in overruling an objection to the state's comment on the defendant's silence before trial; and, (3) the court erred in failing to submit jury instructions MAI–CR 313.04 and 306.06, including all applicable self-defense language. We dismiss the appeal for lack of trial court and appellate jurisdiction.

On July 23, 1997 a hearing was held pursuant to a petition filed by a deputy juvenile officer asking that defendant be prosecuted under the general criminal law. The petition alleged that defendant was age fifteen. Apparently, the juvenile court commissioner invoked the provisions of section 211.071 RSMo Cum.Supp.1997 to make such an order upon a showing that the defendant was not a proper subject to be dealt with under the Juvenile Code. The commissioner filed a document denominated "Judgment and Order" on July 24, 1997, which stated:

[T]he Court hereby sustains Movant/Petitioner's Motion to Dismiss and ORDERS that the Petition heretofore filed be and is hereby dismissed in order to allow said Juvenile to be prosecuted under the General Laws of the State of Missouri. FURTHER, the Court Orders that this matter be transferred to the proper authorities for appropriate proceedings.

The circuit court clerk acknowledged the certification, which waived juvenile court jurisdiction over defendant. No Article V judge reviewed or signed the order and judgment. Subsequently, on August 4, 1997 the Grand Jury indicted defendant on six charges. Trial began on March 23, 1998. On April 21, 1998 after defendant was tried as an adult, found guilty and sentenced, an Article V judge filed a "Judgment," which ordered "that the Findings and Recommendations of Commissioner Nolan, entered on or about 7–24–97, be and are hereby adopted and confirmed as the Judgment of this Court."

■ In Point I, defendant argues the juvenile court did not lose and the circuit court never acquired jurisdiction because defendant's certification was issued by a juvenile court commissioner and not an Article V judge. We agree. The Missouri State Constitution vests the judicial power of the state in the courts, which are composed of judges. See Mo. Const. art. V, sections 1, 2, 13, 15, 16. Our Supreme Court has held that court documents not signed by a judge are not final judgments because they are not signed by a person selected for office in accordance with, and authorized to exercise judicial power under Article V. Slay v. Slay, 965 S.W.2d 845 (Mo. banc 1998). A final and appealable judgment consists of a writing, denominated "judgment", signed by an Article V judge, and filed. Rule 74.01(a). Section 211.261 RSMo 1994 authorizes appeals from the juvenile court from final judgments. An order of a commissioner is not a judgment. Therefore, no final and appealable judgment exists, and the trial court never obtained jurisdiction. Because the trial court never had jurisdiction, we have jurisdiction only to dismiss the ap-

peal. *In Re Moore's Estate,* 354 Mo. 240, 189 S.W.2d 229, 235 (1945).

The state argues that defendant "did not timely seek review of the commissioner's findings and recommendations by an Article V judge pursuant to section 487.030.2," thereby waiving his objection to certification. Specifically, the state argues that defendant's failure to seek review of the certification by an Article V judge within fifteen days of receiving notice of the commissioner's findings, waived his rights. In support, the state relies on *State ex rel. York v. Daugherty,* 969 S.W.2d 223 (Mo. banc 1998), which held that any party who fails to challenge a commissioner's "judgment" waives the right to object to that "judgment," and any party who assumes the benefits or burdens of the "judgment" is estopped from attacking it. *State ex rel. York v. Daugherty,* 969 S.W.2d 223, 225 (Mo. banc 1998). Thus, as to a party similarly situated "the commissioner's findings and recommendations are as conclusive as if entered as the judgment of an article V judge." *Id.* Substantively, the state argues that defendant "does not materially dispute a single one of Commissioner Nolan's findings that form the basis for his decision to have appellant certified to be tried in the circuit court, as an adult." The state concludes "appellant could have, and should have, challenged Commissioner Nolan's findings and recommendations pursuant to [section] 487.030.2, RSMo Supp.1997, but he did not." Jurisdiction was never an issue in *Daugherty.* It is the issue here.

▮ The state misses the crux of the present controversy. The state's brief never addresses defendant's argument that he was deprived of due process because he was tried in a court that did not have jurisdiction. The certification is a jurisdictional requirement to divest the juvenile court of exclusive jurisdiction and must be a judgment entered by an Article V judge *prior* to trial. A reading of the appropriate statutes dictates such an action. Section 211.027 RSMo 1994 states,

in pertinent part: "[u]pon the conclusion of the hearing in each case the commissioner shall transmit to the judge all papers relating to the case, together with his findings and recommendations in writing." No Article V judge signed the certification until April 21, 1998 *after* defendant was tried as an adult. Section 211.071.7 provides a procedure for notification of a dismissal to the prosecuting attorney. Section 211.071.9 conditions prosecution as an adult or juvenile court dismissal.

The dissent also misses the crux of the present controversy and overlooks the requirements of Section 211.071.1, .5 and .6(4). The sections grant authority to the *court* to dismiss a juvenile court petition, the *court* to determine a child is not the proper subject to be dealt with under Chapter 211 and the *court* to make a "decision to transfer jurisdiction." A commissioner is not the "court" and no court compiled with these requirements. Not one case cited by the dissent involved questions of exclusive jurisdiction of the juvenile court or an issue of a jurisdictional conflict. The dissent also fails to consider: (1) the stated purpose of Chapter 211 provided in section 211.011; and, (2) the limited authority granted a commissioner in section 211.027.

The circuit court did not acquire jurisdiction until at least April 21, 1998 when the Article V judge adopted the findings and recommendations of the commissioner. The circuit court may have jurisdiction for a future trial. However, the trial proceedings while the case was still pending in the juvenile court are a nullity and the judgment and sentence below are void for lack of jurisdiction. We do not reach defendant's additional points on the merits.

Appeal dismissed.

ROBERT G. DOWD, Jr., P.J. dissents and CHARLES B. BLACKMAR, Senior Judge, concur.

ROBERT G. DOWD, Jr., Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. On July 24, 1997, a juvenile court commissioner certified Defendant to stand trial as an adult.[1] Defendant was indicted on August 4, 1997, and trial commenced on March 23, 1998. Defendant was found guilty on two counts of murder in the first-degree and two counts of armed criminal action on March 25, 1998.[2] On April 1, 1998, Defendant filed a Motion for New Trial generally objecting to the certification. On April 3, 1998, Defendant filed an amended Motion for New Trial, alleging the commissioner had no authority to sign the dismissal order. The juvenile court commissioner's order was adopted as a judgment of the court by an Article V judge on April 21, 1998. Defendant was sentenced on these charges on May 22, 1998.

The majority concludes that a judgment or order signed by a juvenile court commissioner rather than an Article V judge is not a final judgment, and, therefore, no appeal lies because the trial court never obtained jurisdiction. Assuming arguendo that "certification" orders are final judgments,[3] I disagree with the majority because it applies *Slay v. Slay*, 965 S.W.2d 845 (Mo. banc 1998), retroactively to a certification proceeding "concluded" on July 23, 1997. In *Slay*, the Missouri Supreme Court held that family court documents are not final, appealable judgments

unless signed by an Article V judge. *Id.* While *Slay* was the catalyst for the law in its present state, it does not appear to apply in this case because changes in a statute are presumed to operate prospectively. See *Jones v. Mo. Dept. of Social Services*, 966 S.W.2d 324, 327 (Mo.App. E.D.1998)(citing *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 872 (Mo. banc 1993)).

Prior to *Slay*, the second sentence of Section 487.030.1, RSMo Cum.Supp.1997, provided that in cases other than IV–D cases, "findings and recommendations of the commissioner shall become a judgment of the court when *entered by the commissioner*." (Emphasis added.)[4] In response to the decision in *Slay*, the legislature amended the statute to read: "findings and recommendations of the commissioner shall become the judgment of the court when *adopted and confirmed by an order of a circuit or an associate circuit judge*." Section 487.030.1, RSMo Cum.Supp.1998. (Emphasis added.) It seems clear that the certification proceeding at issue here falls under the former statute and became a judgment of the court when entered on July 24, 1997, by the commissioner.

The Missouri Supreme Court ruling in *State ex rel. York v. Daugherty*, 969 S.W.2d 223 (Mo. banc 1998) is instructive on the issue of pre-*Slay* rulings by commissioners. Daugherty, an Article V judge, responding to the concern generated by the decision in *Slay*, began entering

1. Under Section 211.071.1, RSMo 1994, the juvenile court "certifies" a juvenile to be tried as an adult by dismissing the petition alleging an offense considered a felony if committed by an adult. Juvenile court jurisdiction is thereby waived and the juvenile is transferred to a court of general jurisdiction for prosecution under the general law. The juvenile court retains jurisdiction over later offenses if the juvenile is found not guilty, but its jurisdiction is forever terminated if the trial results in conviction. Sections 211.071.9 and 211.071.10, RSMo 1994.

2. This occurred one day after the Missouri Supreme Court's decision in *Slay v. Slay*, 965 S.W.2d 845 (Mo. banc 1998).

3. Nowhere in Section 211.071 is there a reference to a "final judgment" of the court, only to dismissal orders. Moreover, according to the Missouri Supreme Court, judgments to relinquish jurisdiction signed by judges are not considered final. *In re T.J.H.*, 479 S.W.2d 433, 434 (Mo. banc 1972).

4. Chapter 487 of the Missouri Revised Statutes concerns family courts. Section 487.020 governs appointment of all family court commissioners, including juvenile court commissioners. Section 487.030 governs the findings of all commissioners appointed under this chapter.

"final judgments" by adopting and signing orders in family court actions that were previously decided by commissioners. *Id.* at 224. In *Daugherty*, former spouses challenged a dissolution judgment entered by the family court commissioner prior to *Slay*. The Missouri Supreme Court held that a party is estopped from challenging as unconstitutional a judgment of dissolution solely because a commissioner has signed it if they have failed to utilize the statutory procedure available for review by an Article V judge. *Id.* at 225.

As in *Daugherty*, the statute provided a mechanism through which a party could challenge a commissioner's determination before a circuit judge. Section 487.030.2, RSMo Cum.Supp.1997, states that a party is entitled to file a motion for a hearing within fifteen days after receiving notice of the commissioner's findings. "One who fails to timely take advantage of [such] mechanism has waived any objection to the commissioner's authority, findings and legal conclusions ... and the findings and recommendations are as conclusive as if entered as the judgment of an Article V judge." *Id.* at 225. Defendant did not seek review of the commissioner's certification within the statutorily required fifteen days. Therefore, under *Daugherty*, Defendant waived his right to challenge the commissioner's order. *Id.*

Further, a "critical question in determining whether waiver occurs is whether the party affected had a reasonable opportunity to raise the unconstitutional act ... by timely asserting the claim before a court of law." *Daugherty* at 225 (citing *Callier v. Director of Revenue*, 780 S.W.2d 639, 641 (Mo. banc 1989)). While a notable exception arises where subject matter jurisdiction is lacking in the forum where the waiver occurs, "even an absence of jurisdiction is not necessarily an obstacle to a judgment" that conclusively affects the

rights of either party. *Id.* Here, Defendant had an opportunity to challenge the commissioner's finding after receiving notice the case was transferred. Moreover, he had a second opportunity once the trial began.

It is incumbent on a defendant, once he proceeds to trial, to raise defects or objections, constitutional or otherwise, pertaining to juvenile court proceedings, *by moving to quash the indictment or moving to remand for further proceedings in the juvenile court.* *Richardson v. State*, 555 S.W.2d 83, 87 (Mo.App.1977) (emphasis added). *See also, In re T.J.H.*, 479 S.W.2d 433 (Mo. banc 1972); *State v. Abbott*, 654 S.W.2d 260, 273 (Mo.App. S.D.1983)(as in *Richardson*, both cases challenged orders signed by Article V judges). Nonobservance of this procedure constitutes a waiver of any objections, including constitutional objections, that the defendant might otherwise have had as to whether proceedings in juvenile court conformed to prescribed standards. *Id.*[5] Defendant made neither motion at trial, again waiving his right to challenge the juvenile court proceedings.

In reasonable reliance upon the validity of the juvenile court commissioner's order, the State proceeded to indict and try Defendant. Although Defendant objected generally prior to trial, Defendant did not question the commissioner's authority or suggest the dismissal order was defective. Defendant did not pursue such a challenge until after trial. Further, at no time has Defendant challenged the underlying merits of the certification. Defendant also did not seek review of the commissioner's certification within the statutorily required fifteen days. Defendant did not move to dismiss the indictment in the trial court, nor did he file a motion to remand to the juvenile division to conduct a hearing in front of an Article V judge. Although I

---

5. *Ford v. State*, 534 S.W.2d 111 (Mo.App. 1976) and *Jefferson v. State*, 442 S.W.2d 6, 12 (Mo.App.1969) support this proposition. In both, convictions were affirmed despite juvenile defendants' claims that constitutional rights were violated when no hearing was permitted after a juvenile court dismissed the petition.

find no other case directly on point, I believe the language in *Daugherty* applies equally here. For all of these reasons, I would deny Defendant's first point.

Finding the trial court did properly acquire jurisdiction, I would deny Defendant's second and third points for failure on the merits. I believe the judgment should be affirmed.